**EXHIBIT AA**

# Baron, Bryan

**From:** Baron,Bryan <bbaron@co.weber.ut.us>
**Sent:** Thursday, September 14, 2017 4:00 PM
**To:** 'Nadia Pflaum'
**Subject:** RE: Question from Nadia at Standard-Examiner

No problem. I'm happy to help. If you have any other questions as your writing your article, don't hesitate to ask.

**Bryan R. Baron**
Deputy County Attorney
WEBER COUNTY ATTORNEY'S OFFICE
2380 Washington Blvd., Suite 230, Ogden, UT  84401
Office: 801.399.8471
Fax: 801.399.8304
Email: bbaron@co.weber.ut.us

**From:** Nadia Pflaum [mailto:npflaum@standard.net]
**Sent:** Thursday, September 14, 2017 3:36 PM
**To:** Baron,Bryan
**Subject:** RE: Question from Nadia at Standard-Examiner

Thank you so much for this! It really helps. I hope it wasn't too much of a pain to track down dates and figures.

On Sep 14, 2017 3:30 PM, "Baron,Bryan" <bbaron@co.weber.ut.us> wrote:

My responses are below in blue. Let me know if you have any follow up questions.


Also, I've started working on gathering the emails between me and Sam that you requested. I hope to have those to you by tomorrow afternoon.


**Bryan R. Baron**

Deputy County Attorney

WEBER COUNTY ATTORNEY'S OFFICE

2380 Washington Blvd., Suite 230, Ogden, UT  84401

Office: 801.399.8471

Fax: 801.399.8304

Email: bbaron@co.weber.ut.us

**From:** Nadia Pflaum [mailto:npflaum@standard.net]
**Sent:** Thursday, September 14, 2017 1:15 PM
**To:** Baron,Bryan
**Subject:** Question from Nadia at Standard-Examiner

Hi Bryan,

I've confused my editor with my explanation of the timeline of issues on the Lovell case with Sam Newton and his funding, so I wanted to clear up a couple things.

If I understand correctly, Sam asked for permission to exceed the cap of his contract in order to interview 20+ witnesses in preparation for the weeklong hearing set to begin Sept. 25. He wanted $37,000, and the Commission granted 100 hours, or $15,000.

Sam sent an email to the commissioners on March 7th notifying them that his 23B motion had been granted and that he would need additional funding to handle the remand to the district court (which would involve bringing 20+ witnesses to court and asking them questions under oath). In a follow up email on March 9th, Sam estimated that he would need an additional 500-700 hours ($75,000-$112,500) for the work.

Commissioner Harvey responded to Sam on March 14th that the county estimated that the remand would only take approximately 100 hours and that he would pre-approve 100 hours ($15,000) for the work. Sam agreed in a March 15th email and said "[a]t 100 hours, I can give you a better estimate of where we are and what it will take."

I checked back with Sam, who said he'd been invoicing the county monthly from Jan. 2017 to Aug. 2017. You had said he hadn't invoiced the county for the over-the-cap hours he was approved. That's the sticking point with my editor - did he submit invoices or not? Were they not submitted the right way or something?

Yes, Sam has been invoicing the county monthly since January. The county's position is that Sam contracted to represent Mr. Lovell in the appeal for $75,000. That $75,000 should cover the initial brief, a reply brief, and oral argument. Pursuant to the contract and for "good cause," Sam can exceed that cap. The monthly invoices that Sam has been submitting have been for work that should have been covered by the $75,000. He hasn't billed the county for working on the remand, the pre-approved $15,000, yet.

In an effort to get Sam additional funding, I suggested that he should request additional funding for the time he spent drafting the 23B motion. I asked him to total up those hours and send me an invoice for them. Sam totaled up the hours for the 23B motion and sent me an invoice on May 22nd for $8,730 for that work. On May 25th, Sam sent an email

294

to Commissioner Harvey asking for $22,500 for the 23B motion. When asked about the discrepancy, Sam indicated that the $8,730 amount was for drafting the motion itself and the $22,500 amount was for drafting the motion as well as the work done to prepare for drafting the motion.

On June 6th I sent Sam an email expressing concerns over his invoice for $22,500. Two of the concerns I mentioned were that he was billing the county for work that wasn't related to the appeal and that his billing included frequent phone calls, letters, and meetings with Mr. Lovell. (Sam took this to mean that he had to reduce his level of communication with his client; however, I clarified in a phone call that I was only seeking an explanation as to why he needed such frequent contact since it is unusual to have so much client interaction on an appeal case.) I asked Sam to revise his invoice and send it back.

Sam filed his motion to withdraw on June 9th.

On June 30th Sam sent an email indicating that he would be sending in an updated invoice for the 23B motion. On July 18th, I sent Sam an email indicating that I still hadn't seen a revised invoice for the 23B motion. On July 18th, Sam sent me the same invoice that he had sent on June 6th for the $22,500 with no changes. I notified him that his updated invoice hadn't been updated, but he never sent a revised version.

Commissioner Harvey ultimately approved the request to exceed the contract for the 23B motion in the amount of $18,232.50. I sent Sam an email on August 31st notifying him of the approval. Because the 23B motion work was originally invoiced and paid as part of the $75,000, this approval meant that Sam could exceed the $75,000 by $18,232.50. As a result, Sam's invoices for the year were totaled ($11,927.30), and he was paid in full.

(I found Commission minutes that reflect a payment related to the Lovell case, to Michael Bouwhuis in March 2017, which might be the same payment you confirmed to me in our conversation, when I asked if Bouwhuis was still owed money on Lovell.)

Yes, March 2017 would have been when Mike Bouwhuis was paid in full for representation in the trial court.

I saw one other point in Commission minutes, I think from January, in which all public defenders contracts were renewed for the county, but those two meetings are the only ones for 2017 in which either "Sam Newton" or "Lovell" are mentioned in minutes. When the commission approved $15,000 for Newton's continued work, was that done outside of a public meeting? Was it not official?

While the initial contract had to be approved in commission meeting, the determination as to whether Sam had good cause to exceed the soft cap did not have to be approved in commission meeting. That decision was made by Commissioner Harvey who has the responsibility of overseeing public defender contracts.

Can I get a clearer explanation for why Sam Newton's invoices (if he did submit proof of his work) weren't paid, even after $15,000 was approved?

My explanation above should cover this question, but in short, Sam's invoices in 2017 were for work that exceeded the $75,000 cap on his contract and had not been otherwise approved. Sam didn't submit a request or explanation with any of those invoices as to why he had good cause to exceed the contract cap for the work that was done in the invoice.

The only two requests Sam made to exceed the cap were for $15,000 for the remand work (which was never billed) and for $22,500—both requests were ultimately approved.

If I can explain this in a better way to my editor, my day will vastly improve. Thanks in advance.

**Nadia Pflaum**

**Reporter,** *Standard-Examiner*

office: (801) 625-4252

cell: (816) 716-2885

@NadiaPflaum