# EXHIBIT CC



DEPOSITION EXHIBIT
13
NEWTON

DEPOSITION EXHIBIT
11
Baron

**WEBER COUNTY adv NEWTON**
005678.00053

### Transcript from Court Hearing

SN: Your honor, as Mr. Lovell is coming out we'd like to make a motion to have one of his hands uncuffed so that he can take notes.

Judge: That is a request that's been made before and I have permitted Mr. Lovell, good morning, I have permitted him to have, I think it's his righthand that he uses to write, I'm fine with him taking notes.

SN: Thank you, Your Honor.

Judge: We've done that before, so I don't have any—

?: ____. on record that our policy is that we can't do that _____

Judge: We did it during the trial. I don't know—

SN: We've had a problem with proceedings

Judge: We have, I wasn't hesitating because I was thinking I was going to do something differently, I was just thinking that today this is going to be fairly brief and so I wasn't sure how much note-taking there would be. But I'm comfortable with you being allowed and I'll order you to release, I think his righthand for the purpose of taking notes.

SN: Thank you, Your Honor.

Judge: Your welcome. Alright, let's turn to the matter of State of Utah vs Douglas Lovell, this is case 921900407. This is the time scheduled for the court to issue a decision on a motion to withdraw as counsel that Mr. Newton has filed. Mr. Newton is presently representing Mr. Lovell. The state is present represented by Mr. Field and Mr. Murphy. The motion to withdraw that was filed in this case by Mr. Newton was filed back in June on the 9th, I believe, and following the filing of that motion this court in an effort to proceed cautiously instructed Mr. Newton on a telephone conference that involved the state as well to bring that motion before the Supreme Court. This court's concern was that this matter was on appeal and this was an effort to withdraw as appellant counsel and the court felt that it was limited in the 23B order to only addressing questions dealing with ineffective assistance of counsel. And so, when the motion of withdrawal was made, the court suggested that that be reviewed by the supreme court. The supreme court looked at it and justicely issued an opinion, an order dated July 31, 2017, which instructed me to handle the motion to withdraw as counsel issue. And so, with that said, court conducted a telephone conference and put this on the calendar for today. The purpose for that, Mr. Lovell, was so that you could be here, of course, the court did not want to make decisions about your counsel without having you present and being a part of the discussion. And so, it was calendared for today, the attorneys were advised to be here.

|  |  |
|---|---|
|  | We made an order instructing that you be transported. I previously indicated on the record that I perceive this motion to withdrawal of counsel is appropriately under Rule 38A of the rules of the appellant procedure and that is the rule that the court intends to apply in this particular case in evaluating this motion. We met briefly, well I shouldn't say briefly, we met for an extended period of time in chambers a moment ago to discuss a variety of issues and I know Mr. Newton you wanted to make a record on some of the issues that were discussed in the chamber. So, let me allow you to do that at this time, please. |
| SN: | Sure. Your honor, we discussed a variety of issues. The first being that Ms. Sandalvarus litigation investigator in this case turned over a USD disc to the state mistakenly believing that there was an order that she had to turn that over. Mistake has closed after the court and to me and they also disclosed the fact that Mr. Young may have been in conversations with Mr. Young who indicated his willingness to turn over his file to them or documents that he had ___. The court issued an order to the state to return the USD disc to, or USD drive to Ms. Sandalvarus and the state is not to receive, they don't intend to receive the documents from Mr. Young until the court has had an opportunity to rule on that issue. We discussed some other matters pertaining to the motions to withdraw but I don't know if we need to necessarily make record of those. |
| Judge: | Mr. Field, Mr. Murphy did you want to supplement on that? |
| Field: | Yep, your honor. Mr. Newton gave an accurate representation of what we talked about. |
| Judge: | Okay. And then it's my recollection Mr. Field was that the confusion created that resulted in Ms. Sandalvarus sending over to your office the flash drive was because of a proposed order that your office had sent to her and she didn't perceive it as proposed, it didn't have a signature on it, didn't bear my signature on it but it also didn't have language that said "proposed" and I thought that you explained to me that that in your opinion was the reason she perceived she was under an obligation to send the flash drive and in fact did. |
| Field: | Yeah, that's correct your honor. |
| Judge: | Okay. Alright so I am ordering the state to return the flash drive to Ms. Sandalvarus. That flash drive, of course, is to be preserved in the condition that it was in when it was sent to the state and the condition that it's in, I would assume, upon its return. With respect to Mr. Young who was trial counsel for Mr. Lovell. Mr. Young I think was hoping to deliver his box of materials to the state to avoid the need to continue to preserve those documents. I have instructed the state at this point not to accept those materials from Mr. Young until the court can rule on the waiver issues that had been raised as part of the original 23B remand. So, with that said, let's turn now to the motion to withdraw and let me hear from you, Mr. Newton, on that motion. |
| SN: | If the court is okay, I'll make a brief record of why I made this motion and I know that if the court's okay with this, Mr. Lovell would like to address the court with his concerns about the motion and if he could be heard on that as well. |

2

Judge: Okay

SN: I don't know if that's fine for me to speak and then have him speak.

Judge: However you want to do it.

SN: I think that would be the best. This motion is filed, was filed by me maybe extremely reluctantly after much deliberation. Just to give the court a little bit of background, I represent or represented Floyd Maestas on the capital case in post convection proceedings for the past 3-4 years and for reasons I won't get into here, I have been denied about $100,000 in attorney fees on that case. As a solo practitioner that ended up resulting in a lot of stress for me. I ended up having a cardiac event because of that. Visited my doctor and was referred to a cardiologist both of them said I needed to withdraw from the Maestas matter. I filed a motion in the Maestas case to withdraw based on that. And in a follow-up visit in May of this year my doctor indicated to me, he said I should get off the Maestas matter now that I've asked, assume I'm off that case and I said "no, I'm not." He wrote me a pretty strongly worded letter and gave me some strongly worded advice that that case in particular was causing me a significant amount of stress and that I needed to withdraw.

Judge: Now this is the letter, well, I'm sorry.

SN: Yes, that's fine. The letter dated—

Judge: May 4, 2017 signed by Samuel Hill—

SN: Shane Hill. Should be Shane Hill, yeah.

Judge: Oh, I'm sorry.

SN: That's my doctor that I had a follow-up visit with. And he, we didn't discuss the level matter in any way but we were discussing kind of the Maestas case and his indication to me was that I needed to get off that case in his opinion and I'll just use his words, personally he said "a stressed induced heart attack will kill you just as much as a non-stressed induced one." I asked him about my fitness to be counsel on other cases? Can I continue to practice law? And he said, "absolutely you can." I can tell you that that's, you just need to identify for you what are distressors in your life and you need to remove appropriate stressors and that case is one of them. Now, in response to me disclosing that letter to the state of the Maestas matter, the state sent me a letter telling me that they appreciate that there was a potential conflict of interest representing Mr. Lovell. At the time that I received that letter I had been fully funded by the Weber County attorney's office. They had funded Mr. Lovell's appeal and they knew and were aware of the supreme court's remand order and I had been in discussions with them about funding the remand. The county had indicated, we went back and forth, they would authorize an additional $15,000 to complete all remand proceedings. I told them I believe that was

3

unrealistic, given the nature of the remand and what needed to happen, and the county essentially said they weren't going to fund anything more beyond that. Given the nature of that allegation or that difficulty I move the court to fund, order the county to fund the additional work that would have to happen on this case. The court declined to do that indicating it believed that this was a contractual issue between the parties and it wasn't going to enter into a contract dispute between Weber County and me. Now I have not spoken, and I have not had a follow-up visit with my doctor, but I have not been paid by Weber County on Mr. Lovell's matter since January of this year and that was an inadvertent payment. Mr. Baron told me that the accountant accidentally paid it and was told specifically not to. So other than that payment I probably haven't been paid for a year on Mr. Lovell's case and I'm already approaching I think about $30,000 that the county owes me, and I am fearful that to continue involuntary pro-bono representation for Mr. Lovell comprises my ability to adequately represent him on appeal. I know the magnitude of this case, I know the magnitude of what a 23B hearing entails that involves 26 witnesses. I know the magnitude of what it will take to re-brief all of that issue and or to brief all the issues that come up in the 23B. I know what's expected of me in my decisions of the United States Supreme Court and by the American Bar Association's guidelines for representation in a capital case. I don't think I can ethically and zealously represent Mr. Lovell without the guarantees of funding or, it will not result in the same health concerns that I had in Maestas. So, I'm fearful that that compromises my ability to fairly and properly represent him. I think that's an adequate record. Doug, is there anything you feel like I need to say more beyond that?

Lovell: No, I've got, my letter I want to read to you and then I also have a motion here for you that I'd like to read it.

SN: I'm happy to hear from you.

Judge: Why don't you read the letter.

Lovell: Should I give the motion first?

SN: Your honor, I know this motion, if I could speak for that quickly?

Judge: Okay

SN: It's a post A motion, he's anticipating that the court is going to order me removed so I think procedurally it would be proper to address that if the court removes me.

Judge: Okay, so let's take it a step at a time. I haven't made the decision yet on allowing Mr. Newton to withdraw. If and when I permit him to do that then at that point you will be situated as a pro-say litigant and if you want to advance a motion you're certainly entitled to do so.

Lovell: Okay

4

Judge:   So, we'll hold off on that. You said you had a letter you wanted to read, so--

Lovell:   Can I have a quick drink of water? I haven't had any liquid in me for hours here.

Judge:   Is that a problem?

?   Don't have any water here, _____ *(cannot hear this background talking)*

SN   Your Honor, may I share one more thing before he speaks? I should add that I feel tremendous loyalty to Mr. Lovell. And I feel like I know his case as well as anyone. And I think, I have spent the time to read 30 years of litigation and it's an enormous file. And I'm familiar with that entire file, I'm familiar with the trial, I'm familiar with, I have written, largely, I think 98% of the brief is completed on appeal. Because the Supreme Court initially denied our request for Rule 23B remand, we made it early on, so I was anticipating doing all the briefing. I largely completed it. And so, I think that background kind of needs to be addressed before Mr. Lovell says his concern.

Judge:   Okay. Please.

Lovell:   Dear Judge, attorney: Because of the problems I have had in the past with attorneys from Weber County, I feel the need to address this issue at this time before counsel is again appointed to represent me. In 1992 Weber County appointed John Caine and Burney Allen to represent me. From May of 1992 to August of 1993 I talked with Mr. Caine on the phone maybe one or two times and legal visits about the same. He filed 3 or 4 motions, two of which were at my request. After I received the death penalty, Mr. Caine admitted in a deposition that he represented me for a total amount of $49. He also had admitted that had he done my direct appeal he would have received a total amount of $500. In a 2005 evidentiary hearing, he said that he didn't hire a mitigation specialist or have a mental evaluation done on me because things like that weren't being done in 1992 or 1993. Mr. Caine obviously had no knowledge of the 1989, 88 guidelines. As for Mr. Burney Allen, although court dockets and records show that he was my attorney, I have no recollection of ever meeting Mr. Allen. I don't recall him ever being in a courtroom with me from May 1992 through August of 1993 including the 1993 penalty phase. After the Utah Supreme Court renatted my case back to the district court, Weber County appointed Jim Ortalie and Ryan Bushill to represent me. Although I liked both attorneys, they eventually informed a Utah Supreme Court that my case was too complex for them and that I needed more qualified representation. The court again sent my case back to the District Court to be assigned a more qualified attorney by the name of Dave Fillinson out of Salt Lake. In 2011 a Utah Supreme Court overturned my conviction and death sentence. Weber County then appointed Michael Bouwhuis, Sean Young to represent me. Now, here we are again. Mr. Young failed to contact over a dozen witnesses for the 2015 penalty phase. Once it was learned that Mr. Young failed to contact my character witnesses, Weber County terminated his contract solely because of my case. The Utah State Bar investigated Mr. Young and on March 2, 2017 voted to direct the office of professional conduct to file a formal complaint against Mr. Young in District Court. As for Mr. Balles, he was lead counsel in charge of Mr. Young. I believe

5

Weber County 2210

                the upcoming hearing will clearly show that Mr. Ballis failed when it came to overseeing Mr. Young's work. The hearing will also show that there was a lot of confusion and a complete lack of communication when it came to my character witnesses. As for who my attorney will be going forward, I'm asking this court to order Mr. Newton and the Weber County finance department to work out a new contract. Regardless of who counsel is, Weber County will have to pay for them. The common-sense arrow clearly points to one person, Sam Newton. No other attorney knows me in the history of this 32-year-old case better than Mr. Newton. He and I have developed a good working and trusting relationship. This court has already ruled that Mr. Newton's qualified and competent to represent me. He's qualified at the trial at appellant level. To appoint new counsel would greatly delay the upcoming hearing which is set for September 25th. It would take new counsel many months to get familiarized with this case in preparation for the upcoming hearing. The complexity of this case is going to be much more than just contacting witnesses and putting them on the stand and asking some questions. If, however, Mr. Newton is not appointed to represent me under a new contract, I ask this court to appoint counsel outside of Weber County, someone with trial and appellant experience with capital cases. Someone who would not have a conflict of interest with Weber County or any of the previous attorneys who have represented me in the past. Finally, I'd like to thank you Judge Drayer for allowing me this opportunity to address my concerns on the record.

Judge:      You're welcome, thank you. Mr. Field:

Field:        Your honor, first of all we contest many of the facts that Mr. Lovell has just stated but we won't go into any of that because that's not the purpose of this hearing. We do believe that Mr. Newton has a conflict of interest and we don't think that there's really any rational basis to distinguish between the problems that are occurring or the problems that occurred with Mr. Newton's health problems and Maestas in those that he has admitted are also occurring in the Lovell case. We think that for those reasons that the court should grant Mr. Newton's motion to withdraw. We think that we view that if what Mr. Lovell has to say about re-appointing Mr. Newton we think that that's could be very, very problematic. Mr. Newton's representation is if he has a conflict of interest he has a conflict of interest. And in _____ or appointed as, or if he were doing the _____ case he would also raise the same sort of conflict issue as an argument why Mr. Lovell would get, should get post-conviction relief. We think that allowing Mr. Lovell or Mr. Newton to withdraw allows the case to go forward without that cloud of conflict and will down the road any further problems related to that. Does the court have any questions:

Judge:      No, thank you.

Field:        Thank you

Judge:      Did you want to make a final statement Mr. Newton, in as much as this is your motion.

6

Weber County 2011

JN: Very, very brief. I didn't mention one other fact which I think clouds my judgement in this case. Which is, the county indicated to me action concerns about my billing. Of note, was I was speaking too frequently with Mr. Lovell. They indicated if I did not resolve those concerns about my billing that it would jeopardize my ability to contract with them. So, the court knows I, and the court is probably aware, I do all the appeals out of Weber County and I do feel that zealous advocacy for Mr. Lovell on this case may jeopardize my livelihood. And I hadn't mentioned that before but that is another factor I think that clouds my judgement and makes it difficult for me to adequately and zealously represent him. I will also note, and this is in the motion, that Mr. Lovell does have the right to have effective assistance of counsel in the 6th amendment which I think trumps everything we're doing here. And he's entitled to effective counsel and whether if, if it can be me, if it is me, it has to be remedied that those conflicts that I have have to be remedied. If not, then he needs someone who is appointed who does not have these conflicts.

Judge: Thank you. As I indicated at the outset this motion is governed in my opinion by Rule 38A of the Utah rules of the appellate procedure. That rule specifically says, it's subparagraph A1 withdrawal in criminal cases and certain civil cases and it reads as follows: An attorney may not withdraw from a criminal case or from a civil case in which that attorney's client has the right to effective assistance of counsel except upon motion and order of the court. Absent, good cause shown, leave to withdraw will not be granted unless the motion to withdraw is accompanied by an entry of proposed appearance by new counsel or a representation by the withdrawing attorney, the client is entitled to the appointment of new counsel. So, the question in this particular case is whether or not the allegations raised by Mr. Newton and to a degree stipulated and/or agreed upon by the state, rise to the level of constituting good cause. There is no question that the Hallmark concern of the court in this case is that Mr. Lovell be provided with the effective assistance of counsel. He is entitled to it, no one disputes that and so then the question becomes how do we make sure that the attorney representing Mr. Lovell is effective and not saddled with some sort of conflict? The arguments that have been advanced by Mr. Newton in his motion and the attached declaration including the letter from his physician in this court's view are 3-fold. The first and biggest issue, of course, is the money, the payment, and as Mr. Newton accurately represented on the record, he sought this court's intervention in that fee dispute. And specifically asked the court to involve itself in the contract issues that had arisen between him and Weber County. This court was reluctant to do that because there is a specific statutory provision that allows for Weber County to contract with those that are going to provide appellant counsel. And when Weber County does so, it is up to Weber County and the attorney whom they're contracting with to enter into an agreement that both sides feel is fair. If in that negotiation process a fee is agreed upon that turns out later to be inadequate, that's a function of negotiating, a function of entering into a contract and in life sometimes people enter into contracts that wind up benefiting them greatly and other times not so much. But the court is not in a position to step into a contract between two people. In this case Mr. Newton and those representing Weber County and tell them that their contract is going to be set aside and the court is going to somehow reframe that contract. That's not my prerogative to do that, If Mr. Newton had come in under a different provision where the court had appointed him than a court would have more flexibility, of course, in

7

                deciding what fees were reasonable and what fees were not. But that's not our situation. So, with the money issue kind of out there, how does that relate to the motion to withdraw in this case? Well, as the motion clearly outlines, the inadequate, to words that Mr. Newton has used, inadequate funding in this particular case has led Mr. Newton to experience a tremendous amount of stress. And as his doctor clearly indicates in the letter that was attached to the motion to withdraw that stress has resulted in concerns for Mr. Newton's cardiac health. As his doctor indicated a stress-induced heart attack is no less deadly than one induced by a blockage. I think to use the words that were used in the letter. And so, then the question becomes, well what do we do with the health concerns that exists? They're clearly identified, they're clearly serious, the state doesn't dispute them. In fact, the state in response to the letter sent by the doctor wrote its own letter to Mr. Newton saying we think there's a problem here because of what your doctor has said. Now where it creates the conflict, a potential conflict for you Mr. Lovell, is that down the road it would be reasonable, understandable and easy for you to say "I don't think Mr. Newton represented me properly on my appeal and the reason that I don't think that he did was because he wasn't being paid adequately and because he wasn't paid adequately he had health issues. And because he had health issues, he in order to manage his health didn't work as vigorously on my case as he should have. He was trying to look after his own health issues, self-preservation, he put his needs above mine, didn't vigorously and zealously represent me the way that he should have because he wasn't getting paid. And so, with those things all sort of being interrelated and linked together, Mr. Newton has identified a conflict. How does he continue to work without being paid? How does he continue to zealously represent you without being paid when the payment is resulting in him having these hypertension, stress related cardiac events that have resulted in him seeking medical attention? The court is concerned that the issues raised in his declaration and in the motion are so significant that at this point it would be unwise and a mistake to permit him to continue representing Mr. Lovell. I think there is more than good cause in this particular case based on the declaration that's been submitted, the letter that was provided by his physician, the arguments outlined in the motion to withdraw and those that are shared by the state in its response to the motion to withdraw. And so, for the reasons that I have articulated, I'm going to grant Mr. Newton's motion to withdraw. Now that puts us in a posture at this point where Mr. Lovell at least for the present moment that you sit here before the court you are unrepresented. You indicated that you had a motion that you wanted me to consider and if you would like to hand that to my bailiff, I will look at that motion at this time. You'll note that under our rules of procedure, rule 7 specifically, motions that are filed must be served upon the opposing party and there is in the rule a time frame in which this state is permitted to file a response to that motion and then you are permitted to file a reply and then once the briefing is completed it's submitted to me for my decision. I assume, Mr. Field that you've not seen this motion.

Field:        The state has not seen that motion, Your Honor.

Judge:       Okay.

SN:          And I represent that I have not either.

| | |
|---|---|
| Judge: | What do you, what is your position with respect to the court reviewing this motion at this time where you have not yet seen it? |
| Field: | Well when you say review, do you mean you're just going to read it? Or are you going to make a decision on it? |
| Judge: | Well I guess the issue is, should I even be reviewing it until it has been properly served upon you, you've had a chance to respond and it's been noticed up for a decision. |
| Field: | Well-- |
| Judge: | Because to review it at this point it's almost in a way a form of an x-party communication. |
| Field: | Right, I think that we're happy to accept service if the court makes a copy and that would be great. So Mr. Lovell wouldn't have to put it in the mail. |
| Judge: | I'll have my clerk with the assistance of our standing machine make a copy of that. If you'll make two just so Mr. Newton as a courtesy to him can have it there. |
| ? | Sure |
| Judge: | To look at. We're making a copy and I'll have it delivered to you. And then if you want to look at it while I'm looking at it than at least we can be on the same page. |
| Field: | That would be great. |
| Judge: | Mr. Field, Mr. Murphy, how would you like to proceed on this motion that Mr. Lovell has brought to the court? Would you like to address it now? |
| Field: | Yeah, we're happy to respond right now. |
| Judge: | Okay |
| Field: | _____ we think the issues that he raises in here has already been decided by the court. There, I know he says that Mr. Newton does not have a conflict, Mr. Newton says he does have a conflict. If this court were to reappoint Mr. Newton to represent Mr. Lovell with the conflict that he has and bearing in mind that the court has already issued its own ruling months ago about the funding issues. There simply no way that this court can re-appoint Mr. Newton and we won't have exactly the same problems that we're discussing right at the moment. And so, it's the states position that Your Honor should deny the motion. |
| Judge: | Thank you, Mr. Lovell? Like to say anything to John what you've said in your typed motion? |

9

Lovell:     I'd would just like to say that his conflict is only if he's not getting paid, that's going to cause him problems. They have to find new counsel for me and that's going to cost, to me that's going to cost a lot of money and great delay, going to cost a lot of money for them to get caught up to where he is now and to me it's going to cost a lot of delay. I don't see this September hearing happening now. And it's going to cost even further delay. So, if his conflict of interest is because he's not getting paid, they have to pay new counsel anyway. Why not just work up a new contract with a new, right now, not worried about what's happened in the past. A new contract and appoint him?

Judge:     Your logic is not flawed. It makes sense to me, but I can't order Weber County to contract with a particular person at this point in time. I can't order them to renegotiate with Mr. Newton. That's their prerogative. They are the contracting entity. They entered into a contract with your attorney. He sat down, and he said I'm willing to do the work for this amount of money. Now the problem that this situation creates is that even if hypothetically I granted your motion and I directed Weber County to pay Mr. Newton more money. Where does it end? Is the problem. Because then we reach another point in time where Mr. Newton says, okay now I feel like I've earned what I've been paid, and I want more. And if you don't give me more, I have a conflict. The conflict being it's causing me health issues and the health issues are making it so that I can't adequately represent my client. And so, we just keep going around and we go around and we go around. Your position that Mr. Newton has worked more on this case than any other lawyer – again, it's not a flawed argument. I respect and appreciate that. I also respect and appreciate the delays that this will cause. I further appreciate the fact that Weber County will have to enter into a contract with new appellant counsel who will then have to spend an inordinate amount of time getting up to speed. I respect and appreciate all of that. But at the end of the day my primary concern is making sure that you have effective assistance of counsel and that that counsel not have a conflict. Not with you but a conflict that results in health issues that are generated because of a money dispute, a fee dispute. I didn't create this situation but now I have to sit back and say does this compromise Mr. Lovell? My view is that it does. Does that mean that Mr. Newton hasn't done a herculean job of representing you? No. Does it mean that I'm somehow saying that I don't think that he's a good appellant lawyer? No. It just means that the situation has evolved to a point where I no longer feel that he can represent you without a potential conflict because of the problems that he has with Weber County. So, I now have got to find an attorney who doesn't have that kind of conflict who can zealously and adequately represent you without any sort of reservations without any sort of health issues that are related. So that, my focus is on making sure that you have adequate counsel not on robbing you of adequate counsel.

Lovell:     But are you finding me counsel or is it them finding me counsel?

Judge:     So, here's the answer to your question. And I should say prior to answering your question that because you're asking me essentially to revisit this contract issue and involve myself in it, I'm denying your motion. With that said, here's what I'm going to do. I'm going to draft an order that directs Weber County to identify new counsel within 20 days. Now the

10

|        | |
|--------|-|
|        | reason for that 20 days is because rule 38A actually contains a 20-day notice to appear or appoint provision. It doesn't directly apply in our fact pattern, it really applies more in the civil context. It says if an attorney withdraws under subdivision B1, dies is suspended from the practice of law, is disbarred or is removed from the case by the court. Now I suppose we could argue that I'm removing Mr. Newton from the case. I'm not sure that's the contemplated scenario but it says the opposing party shall and the court may serve a notice on the unrepresented party informing the party of the responsibility to appoint new counsel or if the unrepresented party is a natural person the responsibility to appear personally or appoint new counsel. Copy of the notice served by the opposing party shall be filed with the court. No further proceedings shall be held in the case until 20 days after such a notice is served. Unless the unrepresented party waives the time requirement or unless the court otherwise orders. Now you don't have the ability as an indigent defendant to go out and find new counsel. This contemplates that the state would than submit a notice to you to find new counsel or represent yourself. I'm not directing that to occur. What I'm saying is I'm using this rule, this provision in the rule as a guide post and I'm saying I'm directing Weber County now because its statutorily obligated to do this. To go out and find new appellant counsel for you and enter into a contract with that appellant attorney. Now you mentioned a concern about someone outside of Weber County. Mr. Newton doesn't work in Weber County, he has a contract with Weber County but he's outside of Weber County. The attorneys that are on a list who are Rule 8 qualified to represent individuals situated like yourself in appeals. There's a list of attorneys. Many of them reside in Salt Lake County and as that's been pointed out by the state, that would be convenient in terms of appearing before the Supreme Court, visiting with you down at the prison. Really the only inconvenience would be coming to Ogden occasionally for a hearing or for our 23B matter. So, there is a list of attorneys and Weber County will be given 20 days in which to do that. Now if Weber County is unable to contract or to identify the attorney they intend to contract with in that period of time than this court intends to exercise its authority to identify an attorney and make that appointment. Under that scenario the court would then have the ability to oversee the payment of funds. It would no longer reside with Weber County in terms of a contract, it would then fall under the statutory provision of law that allows the court to make that appointment and then to oversee the attorney fees that are being earned and requested. That would all fall under my umbrella at that point. But for now, I'm allowing Weber County to proceed as it has in the past which is to enter into its own contract with an appellant attorney that is qualified to do this work and to move forward in that direction. If and when the time comes but that has not occurred than we'll proceed under a different provision of law |
| Lovell: | So, Your Honor, correct, you don't have the authority to order these two to come together and work out a new contract. |
| Judge: | Sadly, no. Sadly no. I mean, I don't know of a scenario that I could suggest to you that might exist in the prison that would be more, kind of able to, you would understand it better than this scenario but if you had fellow inmates and two of them entered into an agreement. One was going to do, clean the other cell in exchange for some extra food at the time of going to the mess hall or whatever it's called where you gentlemen eat and the |

11

first person did the work and the second person didn't give extra food and they came to you and said – Hey, make him do it and you'd say, I'm not in charge of him. You guys entered into your own deal, you need to work it out. That's my point is that I'm not a party to this contract. They didn't come to me, I didn't sit down with them and discuss the fee and the three of us signed this agreement. They did this on their own and so the dispute is between them. And if Mr. Newton feels that they haven't honored the contract, then he certainly has the ability to file a lawsuit, claiming that they breached their contract. If he wants to go and sit down with them and renegotiate, he's free to do that. But if Weber County says we paid you what we're going to pay you and we're not paying you anymore, there's nothing I can do at that point.

Lovell: _____ for a new contract going forward.

Judge: Sure

Lovell: Nothing to do with what's happened over here.

Judge: Right. You mean if they were to find another attorney?

Lovell: No, I'm talking about, you know, Weber County or you, a new contract to handle this 23B procedure--

Judge: Sure

Lovell: and the rest of the--

Judge: But they're the two that have to enter into it. I can't create the contract for them.

Lovell: But you see the problem, surely, to me it seems like you could be able to step in and say wait a minute there's a problem here and I'm going to deal with it.

Judge: It's a fair point. The problem is is that my authority is limited. I don't have just unlimited authority to do whatever I want. That doesn't even occur in my own home. So, I say that obviously humorously but what I'm trying to say very seriously is that the court has limited authority and I don't have the authority to compel Weber County and Mr. Newton to sit down and enter into a new contract. I mean if Mr. Newton said Judge I can't do this anymore, is it my prerogative to tell him you're going to enter into a new contract. He's identified very real and serious health concerns and I'm inclined to take him at his word and his doctor's word and not second guess those concerns. Someone like you might say well Judge can't you just ignore what the doctor said and tell him he has to stay on my case?

Lovell: I mean I wouldn't even be fighting this hard for Sam if he were to say hey Doug I just can't do this for health reason going forward. I mean he's made it very clear, I want to stay on your case. My conflict isn't with you it has to do with the funding. As long as they're willing to fund me for, I'd like to stay on your case.

12

Judge: Sure, and I know but the funding has led to a health problem.

Lovell: Because of the problems I've had with Weber County attorneys in the past, I've never complained or tried to fire an attorney outside of Weber County, I want to make that very clear. I've had issues with John and you know all of the other Weber County attorneys. I've never complained or tried to fire an attorney outside of Weber County. And I think a lot of that has to do with the people that they get. I think they just do, just the bare minimum and it causes problems with me. Say listen, I mean I'm not an attorney, but I do know that this, this and this needs to be done and when I don't see that being done, I raise problems. I've never had to do that with an attorney outside of Weber County, but I have with the three sets of attorneys that they have appointed to me in the past. That's why I was hoping that you would get involved so you know what? Enough is enough.

Judge: Well, I again can't say enough that I respect the position you're in and how frustrating it is for you. My primary concern has and will continue to be making sure that you are adequately represented by an attorney who doesn't have a conflict of any kind. And the concern, of course, that was raised, and Mr. Newton supplemented the record and made an additional point that I had not included but I think it's worth mentioning. He addresses this in his declaration when he says that the county commission and the county attorney's office, I could be wrong in identifying both but one of the county entities had expressed concern about the frequency of contact that he was having with you. That's a problem. I mean when the funding entity is telling the appellant attorney we think you're calling him too much, we think you're visiting him too much, we're not going to pay you to do that. Right away, that creates a conflict for Mr. Newton because he's saying well if I'm not going to get paid to do this stuff then I'm not going to call him as much. I'm not going to go see him as much. And if that occurs he's not adequately representing you. You see the problem. So, I want an attorney that is not in that position. That can sit down with Weber County and say I can do this for this amount of money and I'm confident I can get it done and I'm going to go see him as much as I want to go see him and I'm not going to be constrained by my contract. You follow me?

Lovell: Right, but I also see a scenario where they get paid a certain amount of money and he says okay if I'm talking to you this amount of time on the phone, it makes it to where I don't get as much money, do you know what I mean?

Judge: I think I know what you mean. I'm not entirely sure. When you say it makes it so that he doesn't get as much money, I don't know—

Lovell: Well, yeah, let's say he contracts for say a, let's just say $75,000—

Judge: Okay—

Lovell: to represent me on this and he's talking with me on a regular basis which we don't talk as near as often as people think that we do. But, well I can't spend as much time with you

13

|        |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                              |
|--------|-----------|

                on the phone, Mr. Lovell, come out and visit you because that's going to take from the $75,000—

Judge:     Cut into the money I'm getting--

Lovell:    Yeah, cut into the money—

Judge:     I get it. I completely get it. But I didn't create that contract, right? I mean--

Lovell:    And I guess that's one of the things I'm worried about is the contract.

Judge:     Yeah. Well I share your concerns. But I'm in the same, not in the same position but in somewhat the same position you're in and that is they're not going to negotiate with me or with you. That attorney is going to negotiate with the county—

Lovell:    That's why it would be nice to have you oversee it.

Judge:     Well, I'm giving them an opportunity, a very narrow and brief opportunity to find an attorney that will enter into a contract with them to provide the services that you are in need of. If that can't happen, then at that point I think I have the authority under that statute to step in and make that appointment on my own and then be overseer, if you will, of the funding. But before I step in in that way, I'm still permitting Weber County to proceed under the statutory authority that it has to enter into the contract. Once I've given them the opportunity to do that, if they're unable to because I'm going to move your case along because you have the right to have this case resolved. I think at that point I would be shaved to step in and say I'm going to make the appointment, I'm going to decide how much money is going to be paid along the way. It isn't that I create a contract, it's that the attorney comes in, does the work and then submits fee requests for reimbursement for the hours being worked and I have to look at them and determine if they're reasonable.

Lovell:    Right. The other thing that I strongly object to, Your Honor, and this is even the ABA guidelines is a cap. Say you're going to do this for say $50,000 and you don't get any more after that and then all of a sudden they're getting into this case and they're going – WOW, this case is huge so I'm going to start cutting, I'm going to start cutting back over here and we're not going to put these witnesses on because you know, we're not going to make any money if there's a cap here.

Judge:     And so, my response to that statement is that if there's a concern that caps are somehow violative of an individual's constitutional right to the effectiveness of counsel, effective assistance of counsel, than the remedy is for an attorney who feels that a cap is somehow unconstitutional or it violates public policy in some way, shouldn't be included in the contract. It's for that lawyer to challenge that contract. To file a separate action saying I don't think this cap is constitutional or I don't think this contract is legal.

Lovell:    But that's what I worry about. Like $75,000 is dangled out in front of that attorney or attorneys and they say yeah I want that money and then all of a sudden they get involved

14

in it and they find out the complexity of this case and then they can't go back to Weber County and ask for more money because Weber County will say you agreed to $75,000. Well the out for the attorney is to do as little as possible because and I'm the one that ends up paying for that and Weber County tax payers end up paying for that because we come back to this time after time after time. And Weber County, they say hey, you know, you agreed to this contract, therefore, we're not paying you a dime more. And so, honestly, It's to his advantage to do as little work as possible to talk to me as little as possible because it's getting into that money thing.

Judge: I understand

Lovell: And that's happened time after time after time on this case. That's why I was hoping that the court would—

Judge: Step in and—

Lovell: Say enough is enough

Judge: Yeah. Well it's not that I don't feel enough is enough, it's that there's a difference between feeling it and being able to articulate it in terms of an order. I mean I don't think this scenario is a good scenario. But it is the statutory scenario that our legislature has created.

Lovell: But you see they're wrong as being done.

Judge: Well, and that's where I think that maybe you and I depart a bit is when you think that I'm making decisions that are not in your best interest. My goal is to make decisions that are in your best interest in the sense that I want to find an attorney for you that isn't going to be in this conflict situation that Mr. Newton finds himself in.

Lovell: But he doesn't have a conflict as long as they're funding him. They will have to fund an attorney anyway and to get an attorney or attorneys up to speed to where he's, you know I am absolutely, positively convinced that he has read my file.

Judge: Yeah. Okay. Well, I've made the best decision that I can under the challenging circumstances that the court has been presented with. I'm not going to take any action at all on this case although I think, let me just look here. I'd like to schedule us to come back together for a status conference. I think that we need to because we presently have evidentiary hearing scheduled. I'm not moving it at this point, but I think I anticipate that it's going to need to be moved but I don't want to make adjustments to that hearing until I see where we are with the new counsel. So, what I'd like to do is, I'd like to put this on 21 days from today is the 19th of September. And, let me just see, I would like to put this on the next day which is the 20th of September, Wednesday morning. I'd like to schedule this at 9:00. We can do that by way of telephone conference. I'll send notice, of course, out to Mr. Murphy and Mr. Field. And then we'll send notice to the county attorney's office so that they can be present and update the court on the status of the identification

15

| | |
|---|---|
| | of new appellant counsel. I will make sure to include you in that telephone conference, Mr. Lovell because I think it's important for you to kind of know where things are even though I'm not going to be making substantive decisions. I think the plan would be to at least have you on the line so that you know what's being done and can have a better sense for the time. |
| Lovell: | The 20th at 9:00 am? |
| Judge: | The 20th at 9:00 am. We'll make arrangements with the prison to have you available telephonically. |
| Lovell: | And Your Honor would you like this, those, the letter I read to the court? |
| Judge: | Hum, I'm happy to receive it and have it made a part of the file. |
| ? | I would do that. |
| Judge: | I don't have a problem with that, so we'll go ahead and do that. |
| Lovell: | Thank you |
| Judge: | And then, let's see, did I give you _____ |
| ? | _____ |
| Judge: | I gave it back to you? Okay, excellent. Okay, anything else? |
| SN: | Can I just ask one question about the order to withdraw? Is there a, I don't know how to phrase this, but "alt" provision or a no-fault provision? Meaning, and maybe I should express my concern which is I don't, I'm worried this has happened in other capital cases where the funding authority comes back at the attorney and says that I've created this conflict. And that I need to reimburse them all of the money I've paid or have been paid. |
| Judge: | Well, I don't think that's a question I can address today. |
| SN: | I don't know either, but the court is making fining us as to the reason for withdrawal and there's good cause-- |
| Judge: | That's all I'm finding. |
| SN: | There's this good cause given the health concerns or is it--- |
| Judge: | Well, I think I found it, it's kind of interrelated. It started with the money issue which led to health concern which then led to how that effects your ability to represent. If you're scaling back in your representation because you're concerned about your health because you're concerned about not getting paid. I mean they all sort of interrelates. |

16

SN: Yeah

Judge: But ultimately, I found that there was good cause to withdraw—

SN: Will be sufficient.

Judge: Mr. Field, Mr. Murphy anything to put on the record before I take us into recess?

Field: We have nothing more your honor.

Judge: Okay, thank you gentlemen.

17

Weber County 2222